IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY OHIO

| | |
|---|---|
| Dealer Tire, LLC<br>3711 Chester Avenue<br>Cleveland, OH 44114,<br><br>      Plaintiff,<br><br>vs.<br><br>Stewart N. Hall<br>1159 West Vernon St.<br>San Dimas, CA 91773,<br><br>      Defendant. | CASE NO.<br><br>JUDGE<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Dealer Tire, LLC ("Dealer Tire"), by and through counsel, as and for its

Complaint, states as follows:

### PRELIMINARY STATEMENT

1. This is an action arising from a former employee's violation of his Non-

Competition, Non-Solicitation, and Non-Disclosure Agreement through his new employment with

a company that provides goods or services of the same nature as his prior employer, through

his solicitation of his prior employer's customers, and through his interference with the

Company's relationships with its customers.



EXHIBIT A

## VENUE AND JURISDICTION

2. This Court has subject matter jurisdiction over this matter pursuant to Ohio Rev. Code § 2305.01.

3. This Court has personal jurisdiction with respect to Defendant in this matter because Defendant Stewart N. Hall ("Defendant Hall") breached a contract formed in Ohio with a company headquartered in Ohio, because Defendant Hall **specifically agreed that jurisdiction (as well as venue) is proper in Ohio** (see ¶ 16 hereof), and because Defendant Hall has tortiously interfered with the prospective economic advantage of his former employer, Dealer Tire, a company headquartered in Ohio.

4. This Court has venue over this matter pursuant to Civ. R. 3(B).

## THE PARTIES

5. Dealer Tire is a Delaware limited liability company with its headquarters and its principal place of business at 3711 Chester Avenue in Cleveland, Cuyahoga County, Ohio. Dealer Tire employees approximately 231 associates in Ohio, plus approximately 209 additional associates outside of Ohio, for a total of approximately 440 associates throughout the United States. (Exhibit A, Affidavit of Dealer Tire's Director of Sales Operations & Strategy, Kevin R. Weidinger (hereinafter referred to as Weidinger Affidavit) ¶ 3.)

6. Defendant Hall is an individual who, upon information and belief, resides in Arcadia, Los Angeles County, California.

## FACTUAL BACKGROUND

7. In 2002, Defendant Hall was hired by Dealer Tire, a company founded by Scott Mueller and Dean T. Mueller. At that time, Dealer Tire employed a total of only approximately 60 associates. (*Id.* ¶ 4.)

8. From 1918 to 2002, the Mueller family had been the owners and operators of Mueller Tire, a retail seller of tires and related products and services in the Northeast Ohio area. The Muellers sold the Mueller Tire business in 2002. While operating in the retail business, the

Muellers also started to develop strategies and a program designed to help automotive dealerships enter the tire retail business. (*Id.* ¶ 5.)

9. After the sale of Mueller Tire, the Muellers focused exclusively on developing their new business venture -- i.e., Dealer Tire, focusing on the automotive dealership channel. The business of Dealer Tire would be to sell tire "programs" and tires and associated products to automobile dealers across the nation. The business would be and is facilitated by "alliances" with the OEM automobile manufacturers, including Audi, BMW, Mini-Cooper, DaimlerChrysler (Mopar), Infiniti, Lexus, Kia, Mercedes-Benz, Porsche, Nissan, Saab, Toyota, and Volkswagen. (*Id.* ¶ 6.)

10. At the beginning of Defendant Hall's employment, and on many additional occasions over his nearly five years of employment, Dealer Tire provided Defendant Hall with specialized training in connection with developing business and developing relationships with the owners, managers, and other representatives of automobile dealerships and with "field representatives" of the various automobile manufacturers. This training and dealership channel knowledge provided Defendant Hall with an understanding of, among other things, Dealer Tire's pricing system, dealership lists, dealership contacts, marketing strategies, sales techniques, selling process, tire program elements, automobile manufacturer field contacts, and channel unique information technology. (*Id.* ¶ 7.)

11. On or about July 31, 2002, Defendant Hall signed a "Non-Competition, Non-Solicitation, And Non-Disclosure Agreement" with Dealer Tire (hereinafter referred to as the "Contract"), a copy of which is attached to the Weidinger Affidavit as Attachment 1. (*Id.* ¶ 8.)

12. In the Contract, Defendant Hall and Dealer Tire acknowledge that the Contract is necessary "to protect the company against the unfair competition by [Defendant Hall] that would necessarily result from [Defendant Hall] using the specialized knowledge and training provided by the Company to compete against it; and to protect the Company against the unfair competition that result from [Defendant Hall] being the contact and liaison between the

Company and its customers." (Exhibit A, Weidinger Affidavit, Attachment 1, Contract at p. 2.) The parties further acknowledge that "it has taken the Company substantial time and expense in which to develop [its] expertise, . . . list of customers, their patronage, and good will." (Id. ¶ 1.)

13. The Contract provides, among other things, that for one year after the ending of Defendant Hall's employment, Defendant Hall may not be employed with another company that provides "goods or services of the same or similar nature as those provided by [Dealer Tire] . . . or that otherwise competes with [Dealer Tire] within those geographic markets in which the Company does business. . . ." (Exhibit A, Weidinger Affidavit, Attachment 1, Contract §1.)

14. In addition, the Contract provides that for two years after the ending of Defendant Hall's employment, Defendant Hall shall not "interfere [with] . . . any relationships between the Company and its customers" or "[divert] or [solicit] or [attempt] to divert or solicit any customers of the Company." (Exhibit A, Weidinger Affidavit, Attachment 1, Contract §2.)

15. Also, the Contract provides that in the event of Defendant Hall's breach of the Contract, Defendant Hall "consents that temporary and permanent injunctive relief may be granted in any proceeding which may be brought to enforce any provision of [the Contract] without the necessity for proof of actual damages and without bond." (Exhibit A, Weidinger Affidavit, Attachment 1, Contract §5.)

16. Finally, the Contract provides, among other things, that it "shall be governed by and interpreted under the laws of the State of Ohio," that Defendant Hall "irrevocably submits to the exclusive jurisdiction of the United States District Court for the Northern District of Ohio or the Court of Common Pleas of Cuyahoga County, Ohio in any such action," that Defendant Hall "waives any objection . . . to venue therein," and Defendant Hall "consents to service of process as if [he] were a resident of Ohio and had been lawfully served with process in [Ohio]." (Exhibit A, Weidinger Affidavit, Attachment 1, Contract §8.)

17. The above-referenced provisions of the Contract (as well as the remaining provisions of the Contract) are reasonable and enforceable in all respects. They are reasonably

-4-

necessary to protect the legitimate business interests of Dealer Tire. (Exhibit A, Weidinger Affidavit, ¶ 9.)

18.     Defendant Hall was provided with valuable and sufficient consideration for his agreement to and execution of the Contract--his employment with Dealer Tire. (*Id.* ¶ 10.)

19.     Prior to the ending of his employment, Defendant Hall held the position of Regional Account Manager for Dealer Tire. He was assigned to the territory that included Southern California. The territory to which Defendant Hall was assigned is critical to the business of Dealer Tire. In 2006, it accounted for annual sales of at least $15 million. (*Id.* ¶ 11.)

20.     Dealer Tire's relationships between its Regional Account Managers and automobile dealers are critical to the success and survival of its business. (*Id.* ¶ 12.)

21.     Defendant Hall's duties as a Regional Account Manager included developing -- on behalf of Dealer Tire and for Dealer Tire's benefit --relationships with representatives of automobile dealerships in order to market Dealer Tire's tire program and products to such dealerships and to develop relationships with automobile manufacturers' "field representatives." As part of his duties, Defendant Hall had regular face-to-face visits with dealership owners, general managers, service managers, parts managers, service advisors, and technicians and other representatives of car dealerships in Dealer Tire's Alliance Network, including Audi, BMW, Mini-Cooper, DaimlerChrysler (Mopar), Infiniti, Lexus, Kia, Mercedes-Benz, Porsche, Nissan, Saab, Toyota, and Volkswagen. This position required regular, active, and close face-to-face and telephonic customer contact. In fact, Regional Account Managers serve as Dealer Tire's principal sales contacts with Dealer Tire's customers. Like all Dealer Tire Regional Account Managers, Defendant Hall developed relationships for Dealer Tire that afforded him with detailed familiarity with the business needs and preferences of the Dealer Tire customers he serviced. (*Id.* ¶ 13.)

22.     Defendant Hall announced he was resigning from his Regional Account Manager position with Dealer Tire in April 2007.

23. Shortly after his resignation from Dealer Tire, Defendant Hall went to work for Am-pac Tire Distributors, Inc. ("ADT"). Upon information and belief, Defendant Hall remains employed by ADT to this day.

24. Since Defendant Hall became (and continues to be) employed by another company that provides "goods or services of the same or similar nature as those provided by [Dealer Tire]," Defendant Hall has breached and is in violation of the Contract, including Section 1 thereof.

25. In addition, on behalf of his new employer ADT, Defendant Hall has solicited and/or made sales to the very same customers of Dealer Tire on whom he called while employed by Dealer Tire. (*Id.* ¶ 16.)

26. In June 2007, Defendant Hall solicited business from Claremont Toyota, one of Dealer Tire's customers by representing, *inter alia*, that because of his employment with ADT, "I can service your off program tire needs much much better." (*Id.*)

27. As a result of Defendant Hall's multi-year relationships with representatives of automobile dealerships in his former territory, as well as with "field representatives" of various manufacturers, which relationships were developed for the benefit of, in the name of, and at the expense of Dealer Tire, and as a result of his initial and ongoing training by Dealer Tire, Defendant Hall, now as an employee of ADT, is in a position to irreparably interfere with and damage the relationships of Dealer Tire with its customers. (*Id.* ¶ 14.)

28. It takes significant amounts of time and effort for a Regional Account Manager replacement to be trained, to get up to speed on the territory and customers, and to establish good working relationships with customers and the applicable contact persons. It takes significant time for customers to develop trust for new Regional Account Managers. Under these circumstances, it would be and is unfair for a former employee of Dealer Tire like Defendant Hall to solicit on behalf of a new employer the same customers with whom he has developed relationships at Dealer Tire's expense and in Dealer Tire's name. (*Id.* ¶ 15.)

29. Through the above described actions, Defendant Hall has breached and is in violation of Section 2 of the Contract in that he has "diverted or solicited or attempt[ed] to divert or solicit . . . customers of [Dealer Tire]," and in that he has "interfere[ed with] . . . relationships between [Dealer Tire] and its customers."

30. To the extent that Dealer Tire and ADT have some overlapping customers, it would be unfair and inappropriate for Defendant Hall to take advantage of and use to Dealer Tire's detriment the relationships established with such Dealer Tire customers during Defendant Hall's five years of employment with Dealer Tire. (Exhibit A, Weidinger Affidavit ¶ 18.)

31. Through the actions described above, Defendant Hall is interfering with Dealer Tire's prospective economic advantage.

### FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT

32. Dealer Tire incorporates by reference and realleges, as though fully rewritten herein, the allegations in Paragraphs 1 through 31 above.

33. The above-described conduct of Defendant Hall constitute breaches of the Contract.

34. Defendant Hall's breaches of the Contract have caused, are causing and, unless enjoined, will continue to cause irreparable harm to Dealer Tire.

35. Dealer Tire has no adequate remedy at law for the irreparable harm caused by Defendant Hall's breaches of Contract.

### SECOND CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

36. Dealer Tire incorporates by reference and realleges, as though fully rewritten herein, the allegations in Paragraphs 1 through 35 above.

37. Dealer Tire has valid and legitimate expectances of ongoing or future relationships with its customers that will result in economic advantage to Dealer Tire and Defendant Hall knew or should have known of such expectancies.

38. The above-described conduct of Defendant Hall constitutes tortious interference with prospective economic advantage in that Defendant Hall has interfered with prospective contractual relationships between Dealer Tire and third parties with the purpose or intent to harm Dealer Tire by preventing those relationships from forming or continuing and/or destroying those relationships, and Defendant Hall is without privilege or justification in doing so.

39. Defendant Hall's tortious interference with Dealer Tire's prospective economic advantage was knowing, willful, malicious, and was with reckless disregard for Dealer Tire's rights.

40. Defendant Hall's conduct has caused, is causing, and unless enjoined, will continue to cause irreparable harm to Dealer Tire.

41. Dealer Tire has no adequate remedy at law for the irreparable harm caused by Defendant Hall's conduct.

WHEREFORE, Dealer Tire seeks rulings from this Court as follows:

A. That Defendant Hall shall not be or remain employed with any other company that provides goods or services of the same or similar nature as those provided by Dealer Tire; this shall include, without limitation, employment with ADT;

B. That Defendant Hall shall not interfere with any relationship between Dealer Tire and its customers including any automobile dealers that he called on while employed by Dealer Tire and any other dealer in Dealer Tire's Alliance Network, which includes Audi, BMW, Mini-Cooper, DaimlerChrysler (Mopar), Infiniti, Lexus, Kia, Mercedes-Benz, Porsche, Nissan, Saab, Toyota, and Volkswagen;

C. That Defendant Hall shall not divert business from or solicit or attempt to divert business from or solicit any such Dealer Tire customers;

D. That Defendant Hall shall immediately identify any such customer of Dealer Tire contacted by Defendant Hall since the ending of his employment with Dealer Tire or

-8-

contacted by any other representative or agent (including ADT) at the direction of or with the assistance of Defendant Hall.

E. That the Court enter judgment in favor of Dealer Tire and against Defendant Hall on each claim for relief and award Dealer Tire compensatory damages against Defendant Hall in an amount to be determined at trial, together with interest thereon;

F. That since Dealer Tire has not been receiving the benefits of the Contract as a result of Defendant Hall's contractual violations, that the Court Order that the contractual restrictions of one year (Contract §1) or two years (Contract §2) contained in the Contract not begin to run until Defendant Hall has come into complete contractual compliance;

G. That the Court award punitive damages against Defendant Hall in an amount to be determined at trial;

H. That the Court award Dealer Tire its costs and attorneys fees against Defendant Hall including, specifically, that the Court enforce Section 5 of the Contract providing as follows: "[Defendant Hall] further agrees to indemnify the Company for attorneys' fees, costs, and/or expenses incurred in the event that the company is required to take any actions or enforce any provision of this agreement" (see Exhibit A, Weldinger Aff., Attachment 1, Contract § 5);

I.     For any such other relief that the Court deems just and proper.

Dated: August 22, 2007            Respectfully submitted,

*Terry M. Brennan*

Terry M. Brennan (0065568)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH 44114-3485
Telephone: 216.621.0200
Facsimile: 216.696.0740
Email: tbrennan@bakerlaw.com

Attorneys for Plaintiff
Dealer Tire, LLC

-10-

## JURY TRIAL DEMAND

For those issues which may be tried to a jury, Dealer Tire demands trial by the maximum number of jurors allowed by law.

_____
Attorney for Dealer Tire, LLC